# United States Court of Appeals for the Federal Circuit

---

**EVAN H. NORDBY,**
*Petitioner*

**v.**

**SOCIAL SECURITY ADMINISTRATION,**
*Respondent*

---

2021-2280

---

Petition for review of the Merit Systems Protection Board in No. DE-4324-19-0012-I-1.

---

Decided: May 11, 2023

---

TOBY J. MARSHALL, Terrell Marshall Law Group PLLC, Seattle, WA, argued for petitioner. Also represented by ADRIENNE D. MCENTEE.

MARGARET JANTZEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY.

---

Before LOURIE, HUGHES, and STARK, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Evan Nordby appeals the final decision of the Merit Systems Protection Board denying his request for differential pay for his military service in the Judge Advocate General's Corps of the Army Reserve. Because Judge Nordby's service does not meet the statutory requirements for differential pay, we affirm.

I

Judge Nordby served as an administrative law judge with the Social Security Administration's Office of Hearings Operation (agency). During the relevant period and while employed at the agency, he was also a First Lieutenant in the Judge Advocate General's Corps of the Army Reserve. From January to May 2017, Judge Nordby was activated under 10 U.S.C. § 12301(d) to perform military service in the Army Reserve. During that period, he conducted basic training for new Judge Advocates at Fort Benning, Georgia and at the Judge Advocate General's Legal Center and School in Charlottesville, Virginia.

Federal employees who are absent from civilian positions due to military responsibilities and who meet the requirements listed in 5 U.S.C. § 5538(a) are entitled to differential pay to account for the difference between their military and civilian compensation. Here, Judge Nordby requested differential pay from the agency to make up the difference between his military pay and what he would have been paid as an employee of the agency during his service. The agency denied his request because it determined that those called to voluntary active duty pursuant to 10 U.S.C. § 12301(d) are not entitled to differential pay under 5 U.S.C. § 5538(a).

Judge Nordby appealed the agency's denial to the Merit Systems Protection Board, arguing that the plain language of the statute entitles him to differential pay. He contended that he satisfies the statutory requirement

listed in 5 U.S.C. § 5538(a), because he was called to duty under a provision referred to in 10 U.S.C. § 101(a)(13)(B)— "any [] provision of law during a war or during a national emergency declared by the President or Congress." He argued that 10 U.S.C. § 12301(d) qualifies as "any provision of law" and his activation was "during a national emergency" because the United States has been in a continuous state of national emergency since September 11, 2001. The administrative judge issued an initial decision denying his request for differential pay for failing to state a legally cognizable claim. Because he did not file a petition for review with the Board, that initial decision became final without further review.

Judge Nordby now appeals.

## II

We set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Legal conclusions by the Board are reviewed de novo. *Wrocklage v. Dep't of Homeland Sec.*, 769 F.3d 1363, 1366 (Fed. Cir. 2014).

## III

When called to active duty, federal employees are entitled to differential pay between their military and civilian compensation, if they meet the statutory requirements under § 5538(a). Section 5538(a) reads,

> An employee who is absent from a position of employment with the Federal Government in order to perform active duty in the uniformed services pursuant to **a call or order to active duty under . . . a provision of law referred to in section 101(a)(13)(B) of title 10** shall be entitled [to differential pay].

5 U.S.C. § 5538(a) (emphasis added).

The provisions of law listed in 10 U.S.C. § 101(a)(13) define what qualifies as "contingency operation[s]." Section 101(a)(13)(B) states:

> (13) The term "contingency operation" means a military operation that—
>
> . . .
>
> (B) results in the call or order to, or retention on, active duty of members of the uniformed services under section 688, 12301(a), 12302, 12304, 12304a, 12305, or 12406 of this title, chapter 13 of this title, section 3713 of title 14, or **any other provision of law during a war or during a national emergency declared by the President or Congress**.

10 U.S.C. § 101(a)(13)(B) (emphasis added). Thus, to receive differential pay, an employee must have been called to active duty that meets the statutory definition of a "contingency operation." Contingency operation means activation under the enumerated provisions listed in 10 U.S.C. § 101(a)(13)(B) or activation by "any other provision of law during a war or during a national emergency declared by the President or Congress."

Judge Nordby was called to duty under 10 U.S.C. § 12301(d), which provides for the *voluntary* activation of a reservist to active duty. 10 U.S.C. § 12301(d) (giving authority to "order a member of a reserve component under [the jurisdiction of competent authority] to active duty . . . with the consent of that member"). Because § 12301(d) is not one of the enumerated sections in § 101(a)(13)(B), the only way Judge Nordby could qualify for differential pay is if § 12301(d) is a "provision of law during a war or during a national emergency declared by the President or Congress." Judge Nordby argues that his military service satisfies that statutory requirement because he was called to

duty under a provision of law, § 12301(d), and the United States has been in a continuous state of national emergency since September 11, 2001. *See, e.g.,* 86 Fed. Reg. 50,835 (Sept. 10, 2021) (declaration of the President continuing the national emergency for one year).

We considered and rejected the same argument in *Adams v. Department of Homeland Security*, 3 F.4th 1375 (Fed. Cir. 2021).[1] There, the federal employee was also activated under § 12301(d) and raised the same argument now before us: that he was serving in a contingency operation because "any other provision of law" encompasses § 12301(d) when the timing of activation coincides with a national emergency. *Id.* at 1379. We specifically rejected such an expansive reading of § 5538, which would have entitled differential pay to every federal employee ordered to duty since September 11, 2001, regardless of the nature of their service. *Id.* Instead, we held that "any other provision of law" does not "necessarily include § 12301(d) voluntary duty" if that voluntary duty "was unconnected to the emergency at hand." *Id.* at 1380. In other words, to satisfy as "any other provision of law" under 10 U.S.C. § 101(a)(13)(B) and qualify as a contingency operation, there must be a connection between the voluntary military service and the declared national emergency.

Even though Judge Nordby acknowledges that we are bound by *Adams*, he still urges us to overturn *Adams* because the holding in *Adams*, he argues, conflicts with our earlier precedent, *O'Farrell v. Department of Defense*, 882 F.3d 1080 (Fed. Cir. 2018); Appellant's Br. 22–24 (citing cases from our sister circuits holding that the earlier

---

[1]    We note that the administrative judge's decision became final the same day we issued the decision in *Adams*. While the administrative judge could not have relied on *Adams* to decide the case, we are still bound by our precedent on appeal.

decision controls when there is a split of authority within a circuit). He points to the language in *O'Farrell* where we stated that "[10 U.S.C. § 101(a)(13)(B)]'s use of the word 'any' indicates that this list of statutory provisions is non-exhaustive and that 'other provision[s] of law' should be interpreted broadly." *O'Farrell*, 882 F.3d at 1084 (second alteration in original). He alleges that *Adams* created an intra-circuit split by narrowing the scope of "any other provision of law" and requiring a connection between the military service under § 12301(d) and the declared national emergency. Appellant's Br. 23.

As we previously explained in *Adams*, we find no inconsistency between *O'Farrell* and *Adams*. *Adams*, 3 F.4th at 1379. In *O'Farrell*, the petitioner indirectly supported a contingency operation by replacing a member of the Navy who had been deployed to Afghanistan to support the declared national emergency. *O'Farrell*, 882 F.3d at 1087–88. There was no dispute that his activation was connected to the declared national emergency, albeit indirectly. The issue in *O'Farrell* was not whether there was a connection, but the degree of connection required to meet statutory requirements for differential pay.[2] By contrast, in *Adams*,

---

[2]    In *O'Farrell*, the attorney was activated under 5 U.S.C. § 6323(b), which entitles a military reservist to military leave benefits if called to active duty "*in support of* a contingency operation." 5 U.S.C. § 6323(b) (emphasis added). As we noted in *Adams*, the requirements under § 5538 are stricter than those under § 6323. *Adams*, 3 F.4th at 1379. Judge Nordby notes that unlike § 6323, § 5538 does not contain the words "contingency operation," and the *Adams* court erred by assuming a connection between § 5538 and a contingency operation. Although the term "contingency operation" does not appear on the face of § 5538, it is incorporated by its reference to § 101(a)(13),

the only connection the appellant alleged between his service and the national emergency was a temporal overlap; in other words, his service was not directly or indirectly related to the national emergency. *Adams*, 3 F.4th at 1379. Therefore, *Adams* is distinguishable from *O'Farrell*, and *Adams* did not create an intra-circuit split with *O'Farrell*.

Judge Nordby also argues that the *Adams* court and the agency erred by giving deference to the policy guidance from the Office of Personnel Management (OPM). The OPM guidance instructs that "qualifying active duty does not include voluntary active duty under 10 U.S.C. § 12301(d)." OPM Policy Guidance Regarding Reservist Differential Under 5 U.S.C. § 5538 at 18 (available at https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/reservist-differential/policyguidance.pdf). The agency pointed to the OPM guidance when denying his request for differential pay. He notes that the OPM guidance was not subject to the formal rulemaking process and conflicts with his reading of the statute. But neither the administrative judge nor the court in *Adams* deferred to the OPM guidance when affirming the agency's decision to deny petitioners differential pay. The administrative judge conducted his own statutory analysis including looking at the National Emergencies Act, 50 U.S.C. §§ 1601-1651. J.A. 11–13. *Adams* did not defer, but merely observed that its reading of § 5538 and definition of "contingency operation" are consistent with the OPM's guidance. *Adams*, 3. F.4th at 1380 ("Our reading of § 5538 is consistent with the policy guidance from [OPM] on the matter."). *Adams* relied on its own statutory construction in reaching that conclusion.

---

which defines "contingency operation." 10 U.S.C. § 101(a)(13) ("The term 'contingency operation' means a military operation that . . . .").

As Judge Nordby concedes, our holding in *Adams* controls the outcome of this case unless we hear the case *en banc*. Appellant's Br. 31 (requesting the panel to refer the case for *en banc* consideration); *Preminger v. Sec'y of Veterans Affs.*, 517 F.3d 1299, 1309 (Fed. Cir. 2008) ("A prior precedential decision on a point of law by a panel of this court is binding precedent and cannot be overruled or avoided unless or until the court sits *en banc*."). Here, as in *Adams*, Judge Nordby has not alleged any connection between his service and the declared national emergency other than a temporal overlap between his activation and the declared national emergency. But as demonstrated in *Adams*, a mere temporal overlap with the national emergency is not enough to satisfy the statutory definition of a "contingency operation." Judge Nordby only alleges that *Adams* erred in its interpretations of 5 U.S.C. § 5538(a); he does not purport to show how his activation under 10 U.S.C. § 12301(d) fits the *Adams* definition of a contingency operation and thus warrants a different outcome. Accordingly, we are bound by this court's precedent in *Adams*.

Because Judge Nordby failed to allege any connection between the training and the ongoing national emergency that resulted from the September 11 attack, Judge Nordby is not entitled to differential pay.

## IV

We have considered Judge Nordby's remaining arguments and find them unpersuasive. Because Judge Nordby's service does not qualify as an active duty contingency operation, as required by 5 U.S.C. § 5538(a), the agency properly denied differential pay. We affirm the decision of the Board.

## AFFIRMED

### COSTS

No costs.